UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WORLD FUEL SERVICES SINGAPORE,                CIVIL ACTION
PTE, LTD.

V.                                            NO. 13-5421

M/V BULK JULIANA                              SECTION "F"

ORDER AND REASONS

Before the Court is Bulk Juliana Ltd.'s motion to vacate the arrest of the M/V BULK JULIANA.  For the reasons that follow, the motion is DENIED.

Background

This admiralty and maritime case concerns a Singapore-based marine fuel supplier's attempt to recover a debt arising from the supply of fuel oil bunkers in Singapore to a Panamanian-flag vessel, the M/V BULK JULIANA, which is beneficially owned by a United States company, operated and managed by a United States company, and which was chartered by a German company.

The M/V BULK JULIANA is a dry bulk cargo vessel flying under the flag of Panama.  Its registered owner is Bulk Juliana Ltd.; however, the vessel is beneficially owned by Bulk Partners Ltd., and operated and managed by Phoenix Bulk Carriers US LLC.  During the relevant time, the vessel was time chartered to Denmar Chartering and Trading, GmbH, pursuant to a charter party dated

1

August 13, 2012.

On or about November 12, 2012, World Fuel Services (Singapore) Pte., Ltd. (WFS Singapore) supplied bunker fuel to the M/V BULK JULIANA at the Port of Singapore.  The agreement between WFS Singapore and Denmar for the sale and delivery of the bunkers was subject to the World Fuel Services Corporation Marine Group of Companies (WFS) General Terms and Conditions.  The General Terms and Conditions contains the following choice of law provision:

> 17. LAW AND JURISDICTION:  The General Terms and each Transaction shall be governed by the General Maritime Law of the United States and, in the event that the General Maritime Law of the United States is silent on the disputed issue, the law of the State of Florida, without reference to any conflict of laws rules which may result in the application of the laws of another jurisdiction.  The General Maritime Law of the United States shall apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action....

The Bunker Confirmation issued by WFS Singapore to Denmar provides that the total fuel cost must be paid by within thirty days from the date of delivery.  WFS Singapore maintains that it has never been paid.

Upon learning that the M/V BULK JULIANA was in the Port of New Orleans, on August 13, 2013, WFS Singapore sued the vessel, *in rem*, and Denmar, *in personam*, in this Court.  WFS Singapore requested that the Court issue an arrest warrant for the M/V BULK JULIANA and a writ of attachment against Denmar.  Based on the allegations of the verified complaint, and pursuant to Rules B and C of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issued an arrest warrant and a writ of foreign attachment. The U.S. Marshals then arrested the M/V BULK JULIANA, and this Court granted permission for movement of the arrested vessel within the district. Bulk Juliana Ltd. then posted security to obtain release of the vessel. On February 8, 2014, WFS Singapore voluntarily dismissed Denmar without prejudice after learning that it had become insolvent.

Bulk Juliana Ltd., making a restricted appearance under Supplemental Rule E(8) as owner and claimant of the M/V BULK JULIANA and with full reservation of rights and defenses, now seeks to vacate the warrant of arrest issued against the M/V BULK JULIANA on the grounds that WFS Singapore does not possess a maritime lien against the vessel and therefore is not entitled to proceed *in rem*.

I. <u>Standard Applicable to Motion to Vacate</u>

The special remedies and procedures available to admiralty and maritime claimants are governed by the Supplemental Rules for Admiralty or Maritime Claims, as part of the Federal Rules of Civil Procedure. Rule E(4)(f) of the Supplemental Rules for Admiralty and Maritime Claims calls for a prompt, post-attachment and post-arrest hearing in proceedings under Supplemental Rules B and C. Pursuant to Supplemental Rule E(4)(f), a person claiming an interest in property arrested or attached is entitled to a hearing "at which the plaintiff shall be required to show why the arrest or

3

attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P. Supp. R. E(4)(f).  To carry its burden, the arresting or attaching party must present sufficient evidence to show that there were "reasonable grounds" for attachment and that the arrest is supported by "probable cause." See Diesel Specialists, LLC v. M/V MOHAWK TRAVELER, No. 09-2843, 2009 WL 1036085, at *1 (E.D. La. April 17, 2009)(Engelhardt, J.); see also In re Murmansk Shipping Co., No. 00-2354, 2001 WL 699530, at *2 (E.D. La. June 18, 2001)(Vance, J.).  If the Court determines that the arrest or seizure was wrongful, damages may be recoverable: the burden is on the party pursuing a claim for wrongful arrest to demonstrate that the arresting party acted with "bad faith, malice, or gross negligence."  See Marastro Compania Naviero v. Canadien Maritime Carriers, Ltd., 959 F.2d 49, 53 (5th Cir. 1992).

## II.  Law & Application

Bulk Juliana contends that WFS Singapore cannot show probable cause for the arrest of the M/V BULK JULIANA because it does not have a maritime lien entitling it to proceed *in rem*.  The Court disagrees.

A maritime lien is a special property right in a vessel that gives the lien-holder priority over other claimants.  See Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552, 556 (5th Cir. 2003).  Because a maritime lien "arises in favor of the

4

creditor by operation of law," it cannot be created by contract. See id. With regard to claims for necessaries, including bunkers, very few countries, such as the United States, recognize a maritime lien for necessaries. See Marine Oil Trading Ltd. v. Motor Tanker Paros, 287 F. Supp. 2d 638, 644-45 (E.D. Va. 2003). Singapore law, modeled after English law, does not provide a maritime lien for necessaries, but, instead, only provides a "statutory right of action *in rem*." Sembawang Shipyard Ltd. v. Charger, Inc. (M/V CHARGER), 995 F.2d 983, 988 (5th Cir. 1992). Accordingly, whether WFS Singapore is entitled to a maritime lien against the M/V BULK JULIANA and can proceed *in rem* depends on choice of law: if U.S. law applies, then WFS Singapore may likely maintain a lien for the bunkers;[1] if Singapore law applies, however, then there is likely no lien and thus no right to proceed *in rem*. But see Gulf Trading & Transp. Co. v. The VESSEL HOEGH SHIELD, 658 F.2d 363, 367-68 (5th Cir. 1981)(bunker supply contract governed by English law still gave rise to a maritime lien under U.S. law); see also Martin

---

[1] The Commercial Instruments and Maritime Lien Act (CIMLA) (formerly known as the Federal Maritime Lien Act) provides:

> A person providing necessaries to a vessel on the order of the owner or a person authorized by the owner–
> (1) has a maritime lien on the vessel;
> (2) may bring a civil action *in rem* to enforce the lien; and
> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342.

Davis, Choice of Law and U.S. Maritime Liens, 83 Tul. L. Rev. 1435, 1446 (2009)(claim governed by foreign law may be sufficiently closely connected to the United States to justify conferral of a maritime lien).

Predictably, Bulk Juliana contends that Singapore law applies and thus no maritime lien exists, while WFS Singapore submits U.S. law applies, and it has maritime lien.  Bulk Juliana asks the Court to engage in the choice of law analysis outlined in Lauritzen v. Larsen, 345 U.S. 571 (1953), while WFS Singapore argues that the Law and Jurisdiction provision of the General Terms and Conditions controls.  The Court is persuaded that the Lauritzen choice of law analysis is unnecessary in light of the parties' selection of U.S. law in the General Terms.  See Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTA, 575 F.3d 409, 413 (4th Cir. 2009).  The General Terms specifically provides for the application of U.S. law "without reference to any conflict of laws rules which may result in the application of the laws of another jurisdiction."  The parties could have specified that Singapore law would govern, but, instead, provided precisely to the contrary.  See HOEGH SHIELD, 658 F.2d at 368.

Bulk Juliana makes much of the provision's reference to "the General Maritime Law of the United States" as opposed to U.S. statutory maritime law, including the CIMLA, which provides the right to a lien for necessaries.  See 46 U.S.C. § 31342.  But it

6

simply does not follow that there is no right to a maritime lien. Although the general maritime law and statutory maritime law are doubtless distinguishable, see, e.g., E. River S.S. Corp. v. Tansamerica Delaval, Inc., 476 U.S. 858, 864-65 (1986), the parties' intent to apply U.S. law to this transaction, including "with respect to the existence of a maritime lien," cannot be denied.  Bulk Juliana's reading of the provision would render it meaningless.  At the very least, there is no indication of intent to apply Singapore law.  This Court will not endorse Bulk Juliana's attempt to extort WFS' unwitting conflation of legal principles.

Even absent the contractual provision, a maritime lien exists. In Gulf Trading & Transportation Co. v. The VESSEL HOEGH SHIELD, 658 F.2d 363, 367 (5th Cir. 1981), in an opinion by Judge John R. Brown, the Fifth Circuit outlined the appropriate choice of law analysis for determining the availability of a maritime lien.  The court mandated that in the context of a maritime lien for suppliers of necessaries, the Restatement (2d) of Conflicts of Law Section 6 outlines the relevant principles:

> In the absence of any directives and subject to constitutional restrictions, the relevant factors include (a) the needs of the international system, (b) relevant policies of the forum, (c) relevant policies of other interested states, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Id.   The court ultimately applied U.S. law to the case,

specifically concluding that "the Maritime Lien Statute represents a relevant policy of this forum that serves the needs of the international system as well as the basic policies underlying maritime law."  Id. at 367-68.

Again, it is no surprise that Bulk Juliana contends that the HOEGH SHIELD factors weigh in favor of Singapore law, while WFS Singapore maintains that the factors support application of U.S. law.  After careful consideration of all of the relevant factors, the Court is persuaded that U.S. law governs the availability of a maritime lien.  As in HOEGH SHIELD, the policies of this forum, and thus the international system and the basic principles of this field of law, all point toward application of U.S. law.  See id. It is the policy of this country to grant suppliers of necessaries a lien in order to promote commerce.  See id. at 377. Predictability of result and protection of justified expectations also weigh in favor of U.S. law, based on the parties' agreement to WFS' General Terms.  See id. at 368.  Ease of determination of the law to be applied likewise points toward application of U.S. law to this case.  See id. And although the Court considers the policies of other interested countries, including Panama, Germany, and Singapore, the Court assigns them less weight considering its resolution of the other factors.  See id. Because U.S. law applies, WFS Singapore is entitled to a lien for necessaries.  See 46 U.S.C. § 31342.

In a last-ditch effort, Bulk Juliana contends that any maritime lien that might exist is precluded by the terms of the charter party, which contains a no-lien clause. Because Bulk Juliana presents no evidence of WFS Singapore's actual knowledge of the no lien clause, the Court rejects this contention. See 46 U.S.C. § 31341(a)(4)(B); Stevens Shipping & Terminal Co. v. JAPAN RAINBOW II MV, 334 F.3d 439, 444 (5th Cir. 2003).

Because WFS Singapore has shown probable cause for the arrest of the M/V BULK JULIANA, the motion to vacate the arrest is DENIED.

New Orleans, Louisiana, June 16, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE