UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WORLD FUEL SERVICES SINGAPORE PTE, LTD.    CIVIL ACTION

V.    NO. 13-5421

BULK JULIANA M/V ET AL.    SECTION "F"

ORDER AND REASONS

Before the Court are cross-motions for partial summary judgment by World Fuel Services (Singapore) and Bulk Juliana Ltd. as to what body of law governs the existence of a maritime lien in this case. For the reasons that follow, the Court finds that United States law governs the transaction, and thus WFS Singapore has a maritime lien against M/V BULK JULIANA. WFS Singapore's motion for partial summary judgment is GRANTED, and Bulk Juliana's is DENIED.

Background

This admiralty and maritime case concerns a Singapore-based marine fuel supplier's attempt to recover a debt arising from the supply of fuel oil bunkers in Singapore to a Panamanian-flag vessel, the M/V BULK JULIANA, which is beneficially owned by a United States company, operated and managed by a United States company, and which was chartered by a German company.

The M/V BULK JULIANA is a dry bulk cargo vessel flying under the flag of Panama.  Its registered owner is Bulk Juliana Ltd. of Bermuda; however, the vessel is beneficially owned by Bulk Partners Ltd., and operated and managed by Phoenix Bulk Carriers US LLC.  During the relevant time, the vessel was time chartered to Denmar Chartering and Trading, GmbH, a German company, pursuant to a charter party dated August 13, 2012.

On or about November 12, 2012, World Fuel Services (Singapore) Pte., Ltd. (WFS Singapore) contends that it supplied bunker fuel to the M/V BULK JULIANA at the Port of Singapore.  The agreement between WFS Singapore and Denmar for the sale and delivery of the bunkers was subject to the World Fuel Services Corporation Marine Group of Companies (WFS) General Terms and Conditions.  The General Terms and Conditions contains the following choice of law provision:

> 17.  LAW AND JURISDICTION:  The General Terms and each Transaction shall be governed by the General Maritime Law of the United States and, in the event that the General Maritime Law of the United States is silent on the disputed issue, the law of the State of Florida, without reference to any conflict of laws rules which may result in the application of the laws of another jurisdiction.  The General Maritime Law of the United States shall apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action . . . .

The Bunker Confirmation issued by WFS Singapore to Denmar provides that the total fuel cost must be paid by within thirty

days from the date of delivery. WFS Singapore maintains that it has never been paid.

Upon learning that the M/V BULK JULIANA was in the Port of New Orleans, on August 13, 2013, WFS Singapore sued the vessel, *in rem*, and Denmar, *in personam*, in this Court. WFS Singapore requested that the Court issue an arrest warrant for the M/V BULK JULIANA and a writ of attachment against Denmar. Based on the allegations of the verified complaint, and pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the Court issued an arrest warrant and a writ of foreign attachment. The U.S. Marshals then arrested the M/V BULK JULIANA, and this Court granted permission for movement of the arrested vessel within the district. Bulk Juliana Ltd. then posted security to obtain release of the vessel. On February 8, 2014, WFS Singapore voluntarily dismissed Denmar without prejudice after learning that it had become insolvent.

Bulk Juliana Ltd., making a restricted appearance under Supplemental Rule E(8) as owner and claimant of the M/V BULK JULIANA and with full reservation of rights and defenses, sought to vacate the warrant of arrest issued against the M/V BULK JULIANA on the ground that WFS Singapore does not possess a maritime lien against the vessel and therefore was not entitled to proceed *in rem*. This Court, finding that WFS Singapore had

shown probable cause for the arrest of the M/V BULK JULIANA, denied the motion to vacate the arrest. In that Order and Reasons, dated June 16, 2014, the Court was persuaded that there was probable cause to find that U.S. law governed the availability of a maritime lien.

WFS Singapore then moved for summary judgment, stating in its briefing that this Court had definitively ruled in its June 16 Order and Reasons that U.S. law governed the transaction. Bulk Juliana responded that the standard to prevail on summary judgment is more demanding than that applicable to a motion to vacate an arrest, and that therefore WFS Singapore could not base its argument for the application of U.S. law solely on statements made in this Court's Order and Reasons denying the motion to vacate the arrest. The Court agreed, and now the parties have filed cross-motions for summary judgment as to the choice-of-law question.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine

dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.  Because the grounds for the claimant's cross-motion are largely the same as its defenses to

5

the plaintiff's motion for summary judgment, and because the Court grants the plaintiff's motion and denies the claimant's cross-motion, the Court will resolve all factual disputes and any competing, rational inferences in the light most favorable to the claimant. See Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003); Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996).

## II.

The heart of the question before the Court is whether WFS Singapore has a maritime lien against the M/V BULK JULIANA for unpaid bunkers. Because there is a choice-of-law provision incorporated into the bunker confirmation, the Court must begin by analyzing whether that provision is validly incorporated. See Trans-Tec Asia v. M/V Harmony Container, 518 F.3d 1120, 1124 (9th Cir. 2008); Oceanconnect.com, Inc. v. M/V FESCO ANGARA, No. 09-1694, 2012 U.S. Dist. LEXIS 125241, at **12-13 (W.D. La. Aug. 31, 2012). If so, the question is whether the choice-of-law provision is enforceable and whether the particular body of law chosen here supports the existence of a maritime lien.

*A. The Incorporation of the General Terms*

To determine whether the choice-of-law provision is validly incorporated, the Court must first decide which country's law governs the contract formation at issue. Bulk Juliana contends that Singapore law governs the contract (and the existence of a

6

maritime lien).  WFS Singapore maintains that U.S. law governs the contract, but that the application of Singapore law produces the same result.  To determine which country's law applies, "federal courts sitting in admiralty [should] apply maritime choice-of-law principles derived from the Supreme Court's decision in Lauritzen."  Trans-Tec Asia, 518 F.3d at 1124.  The Court, however, does not find it necessary to delve into this "thorny inquiry," because U.S. and Singapore law produce the same result.  Id. at 1125.  Because the Court recognizes that it must resolve all factual disputes and reasonably competing inferences in favor of Bulk Juliana, and because Bulk Juliana makes a compelling argument that Singapore law governs the contract formation here, the Court applies Singapore law to resolve the issues regarding the formation of the contract.

 The plaintiff provides a statement by a Singapore attorney, Tan Chuan Bing Kendall, and excerpts from a Singapore treatise and case law concerning Singapore law as to the incorporation of terms into a contract.  Singapore law recognizes the ability of contracting parties to formulate their agreement by incorporating the terms of one document or source into another.  In the case where the external document, such as the World Fuel General Terms, is unsigned, the efficacy of the incorporation of the additional terms will depend upon the language of incorporation that is used in the main contract (here, the Bunker

7

Confirmation), and whether the provisions in the document to be incorporated are apt to be terms of the contract. In the case where particularly onerous or unusual conditions are sought to be incorporated, they ought to be specifically drawn to the attention of the party sought to be bound. The key guiding principle is that a Singapore court would seek to discern the contractual intention of the parties, which is to be ascertained by reference to the following factors:

1. Is the incorporating language used sufficiently clear?
2. Does the document to be incorporated expressly state that its contents are to be applicable to the other party sought to be bound?
3. Is the document to be incorporated a common source of terms that are implied into such agreements of the same genre of the contract?
4. Did the party sought to be bound by the incorporated terms have access to, or was he in fact aware of the document at all material times?
5. Did the party sought to be bound by the incorporated document challenge or object to the applicability of the terms of that document to the contract?

The claimant, not disputing the plaintiff's summary of Singapore law, contends that the fourth factor—whether the party to be bound by the incorporated terms had access to them or was aware

8

of them—is not satisfied here, because Bulk Juliana as the owner of the vessel was unaware. "Thus," contends the claimant, "under Singapore law . . ., the rights of Bulk Juliana and the M/V BULK JULIANA, *in rem*, cannot be affected by the intent of the parties to the Denmar-WFS Singapore contract." The claimant, however, provides no support with this claim, and the Court, on the record before it, cannot ground its determinations in unsupported conclusions.

The plaintiff submits that the use of standard terms and conditions, such as the World Fuel General Terms in this case, and their easy availability on the Internet are commonplace in the bunkering industry worldwide, and ought reasonably to be within the contemplation of ship operators and shipowners such as the owner of the M/V BULK JULIANA. In Singapore, Tan explains that it is customary for bunker supply contracts to be concluded on the basis of the supplier's standard terms and conditions that are incorporated by reference in the bunker confirmation. The General Terms are not unusual or onerous in the context of the bunkering trade. Also, Denmar never dissented or objected to the applicability of the General Terms properly incorporated by reference in the Bunker Confirmation.

Applying these principles of Singapore law, the Court finds that the incorporating language contained in the Bunker Confirmation is sufficiently specific and clear in its references

9

to the World Fuel General Terms. The General Terms expressly state that they are to be applicable to the M/V BULK JULIANA, they are undisputably comparable to terms commonly used in the industry, and no objection was raised to their terms until this lawsuit. Thus, Singapore law would recognize a valid incorporation of the World Fuel General Terms. The application of U.S. law to this question produces the same result. See World Fuel Services Trading v. M/V HEBEI SHIJIAZHUANG, 12 F.Supp.3d 792 (E.D. Va. 2014) (finding that the same choice-of-law provision was validly incorporated into another WFS bunker confirmation under Greek law and noting that the terms were validly incorporated under U.S. law as well).

Singapore law, like U.S. law, also recognizes the parties' right to designate the law to be applied to their contractual agreements. Halsbury's Laws of Singapore, para. 75.344, states:

> Where an express choice has been made of the law of a country, even if the transaction has no connection with the country whose law is chosen, the choice will be given effect unless the choice was illegal or not made bona fide, or if the application of the foreign law will be contrary to the fundamental public policy of the forum.

Here, Clause 17 of the General Terms, which was incorporated into the bunker supply agreement, provides that the general maritime law of the United States is the contractual governing law. Singapore law recognizes the prima facie validity of such a contractual choice of U.S. law clause.

*B. The Enforceability of the Choice-of-Law Provision*

Bulk Juliana contends that the choice-of-law provision is unenforceable for three reasons: (1) Bulk Juliana was not a party to the contract and did not assent to the choice of law; (2) it would be fundamentally unfair to adversely affect Bulk Juliana's property right in its vessel based on a choice-of-law provision to which it did not agree; and (3) the U.S. choice-of-law provision is an attempt to do indirectly what cannot be done directly: create a maritime lien by contract rather than by operation of law. The Fourth Circuit found these same arguments unpersuasive in <u>Triton Marine Fuels, Ltd. v. M/V PACIFIC CHUKOTKA</u>, 575 F.3d 409 (4th Cir 2009), and this Court reaches the same conclusion here.

Bulk Juliana's first argument ignores the distinction between an *in rem* action against the vessel and *in personam* action against its owner. See <u>Pierside terminal Operators, Inc. v. M/V Floridian</u>, 389 F.Supp. 25, 26 (E.D. Va. 1974) ("A maritime lien can arise even when the owner of the ship is not a party to the contract . . . . The lien is not against the owner of the vessel, and only affects an owner indirectly."). The question is not whether Denmar had the authority to bind Bulk Juliana Ltd., but, rather, whether it had the (presumptive) authority to bind M/V BULK JULIANA. As the time charterer, Denmar had the presumptive authority to bind the vessel, and WFS Singapore had

11

no duty to investigate this authority. Triton, 575 F.3d at 414 (quoting Trans-Tec Asia v. M/V Harmony Container, 518 F.3d 1120, 1127-28 (9th Cir. 2008)) ("It is a fundamental tenet of maritime law that '[c]harterers and their agents are presumed to have authority to bind the vessel by the ordering of necessaries.'"). Therefore, Bulk Juliana's first argument fails.

Bulk Juliana's second argument also fails. Although Bulk Juliana was not a party to the contract, it is not fundamentally unfair to enforce a choice-of-law provision in a contract between the ship and its time charterer, and a fuel supply company. Where the parties chose for U.S. law to apply, and the ship sailed into U.S. waters, the application of U.S. law does not result in fundamental unfairness to the ship's owner. See Triton, 575 F.3d at 414-15; Trans-Tec, 518 F.3d at 1126-27; Liverpool & London S.S. Protection & Indemnity Ass'n v. QUEEN OF LEMAN MV, 296 F.3d 350, 354 (5th Cir. 2002).

In its third argument that the choice-of-law provision is unenforceable, Bulk Juliana contends that WFS Singapore is trying to create indirectly a maritime lien by contract. The Court recognizes the disagreement by the distinguished Professor Martin Davies[1] and the Second Circuit in Rainbow Line, Inc. v. M/V

---

[1] See Martin Davies, Choice of Law and U.S. Maritime Liens, 83 Tul. L. Rev. 1435, 1455-57 (2009). Professor Davies presents a compelling argument that when confronted with a choice-of-law clause in the contract, courts "should still undertake a separate

12

Tequila, 480 F.2d 1024 (2d Cir. 1973), but the Fifth Circuit readily enforces such provisions.[2] See QUEEN OF LEMAN, 296 F.3d at 354.

Thus, this Court sees no reason to refuse to enforce the parties' choice-of-law provision and to apply "the General Maritime Law of the United States" to decide whether WFS Singapore has a maritime lien against M/V BULK JULIANA.

*C. The General Maritime Law of the United States*

The final question before the Court is the consequence of WFS Singapore's choice to designate in its choice-of-law provision "the General Maritime Law of the United States." The claimant argues that the General Maritime Law is traditionally understood to mean maritime common law, not statutory maritime

---

multifactor choice-of-law inquiry to determine whether there is sufficient connection between the underlying transaction and the United States to justify application of U.S. maritime law to the maritime lien question. To regard the parties' choice as being determinative of the law governing the availability of a maritime lien is simply to ignore or to gloss over the fundamental proposition stated so clearly by the Rainbow Line court . . . : "'[M]aritime liens arise separately and independently from the agreement of the parties, and rights of third persons cannot be affected by the intent of the parties to the contract.'" Id. at 1456 (internal citation omitted). This Court, though not disagreeing with Professor Davies's analysis, is bound by Fifth Circuit precedent calling for the enforcement of such choice-of-law provisions.

[2] Bulk Juliana contends that Gulf Trading & Transp. Co. v. VESSEL HOEGH SHIELD, 658 F.2d 363 (5th Cir. 1981), and Arochem Corp. v. Wilomi, Inc., 962 F.2d 496 (5th Cir. 1992), compel the opposite result. Those cases, however, did not concern a contract with a choice-of-law provision governing the existence of a maritime lien.

law, and modern-day maritime liens are creatures of statute, specifically 46 U.S.C. §§ 31341 and 31342. Thus, WFS Singapore's poor choice of words must be construed against it. WFS Singapore responds that to read the contract language hyper-literally would render it meaningless and that its clear intent was to choose United States law because it allows for maritime liens for necessaries.

The Court is aware of only one other court that has interpreted this particular choice-of-law language. In a detailed and well-reasoned opinion, Judge Davis of the Eastern District of Virginia found that the General Maritime Law of the United States includes the Federal Maritime Lien Act. See World Fuel Services Trading v. M/V HEBEI SHIJIAZHUANG, 12 F.Supp.3d 792, 805-08 (E.D. Va. 2014). Judge Davis detailed the history of maritime liens, of maritime common law in the U.S. and subsequent statutory law. He determined that the General Maritime Law must comply with Congress's resolution of a particular issue, and thus its application to the contract at issue supported the existence of a maritime lien.

Judge Davis's persuasive analysis is bolstered by general principles of contract interpretation.[3] First and foremost, in

---

[3] In its argument that the Court should find the choice-of-law provision ambiguous and construe it against WFS Singapore, Bulk Juliana cites U.S., rather than Singapore, law on contract interpretation, though it repeatedly contends that Singapore law

14

interpreting the meaning of agreements, "[w]ords and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable, it is given great weight." Restatement (2d) of Contracts, § 202 (1981). Clearly WFS chose for its bunker supply contracts the General Maritime Law of the United States because it wanted to secure payments in the form of maritime liens. To read the language so narrowly as to conclude that it includes only maritime common law and not maritime statutory law divorces the language from the intended meaning behind it. "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Id., § 203. Only where other tools of contract interpretation do not resolve the dispute does a court deem a term ambiguous and interpret it against its drafter. Therefore, the Court finds Bulk Juliana's argument unpersuasive and finds that it was the clear intent of the parties to the contract to choose the entirety of the maritime law of the United States to govern the transaction.

---

governs the entirety of the transaction. The Court thus chooses to rely on general principles of contract law, absent an indication from the parties that Singapore law is in conflict.

Accordingly, for the foregoing reasons, the Court finds that United States law governs the existence of a maritime lien. Thus, WFS Singapore's motion for partial summary judgment is hereby GRANTED, and Bulk Juliana's cross-motion is hereby DENIED.

New Orleans, Louisiana, February 11, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE